**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CORENA A. BRENIZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-1593 |
| | ) |
| MICHAEL J. ASTRUE, | ) Judge Cathy Bissoon |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 9) will be denied, and Defendant's Motion for Summary Judgment (Doc. 11) will be granted.

Plaintiff Corena A. Brenizer ("Brenizer") protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on October 27, 2009, alleging the existence of a statutory disability beginning on that date. (R. at 150, 152, 188). Pennsylvania's Bureau of Disability Determination denied the applications on February 11, 2010. (R. at 86, 90). Brenizer responded on March 29, 2010, by filing a timely request for an administrative hearing. (R. at 95-96). On April 4, 2011, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") John Kooser. (R. at 24). Brenizer, who was represented by counsel, appeared and testified at the hearing. (R. at 28-59). Dr. Fred A. Monaco, an impartial vocational expert, also testified at the hearing. (R. at 59-67). In a decision dated May 27, 2011, the ALJ determined that Brenizer was not "disabled" within the meaning of the Social Security Act ("Act"). (R. at 7-20).

On July 25, 2011, Brenizer sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 139). The Appeals Council denied the request for review on November 15, 2011, thereby making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner") in this case. (R. at 1). Brenizer commenced this action on December 11, 2011, seeking judicial review of the Commissioner's decision. (Docs. 1 & 2). Brenizer and the Commissioner filed motions for summary judgment on April 12, 2012, and May 14, 2012, respectively. (Docs. 9 & 11). The parties' cross-motions for summary judgment are now ripe for adjudication.

Brenizer quit school in 2002, after completing the tenth grade. (R. at 197). For the next seven years, she worked as a "shampoo girl" for two beauty salons. (R. at 194). Her last day of work was in close proximity to her alleged onset date. (R. at 32, 193). Brenizer testified that she had left her job because of an inability to deal with the "everyday stresses" of employment. (R. at 32).

At the second step of the sequential evaluation process, the ALJ determined that Brenizer was suffering from an adjustment disorder and an anxiety disorder. (R. at 12). These impairments were deemed to be "severe" under the Commissioner's regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). During the relevant period of time, Brenizer received treatment for her impairments at the Primary Health Network. (R. at 232-240, 270-275). Terri Sharo ("Sharo"), a certified registered nurse practitioner ("CRNP"), served as Brenizer's treating mental health therapist. (R. at 232-240, 263-275).

Treatment notes provided by Sharo indicate that Brenizer was suffering from some degree of depression as early as October 17, 2008. (R. at 232). Two months later, Sharo described Brenizer's depressive symptoms as "minimal." (R. at 240). During the first half of

2009, Brenizer's depression was effectively controlled with medication. (R. at 237-239). Her symptoms exacerbated later that year, when her boyfriend went to jail. (R. at 236). On September 16, 2009, Sharo observed that Brenizer was feeling "overwhelmed" and "d[id] not like being alone." (R. at 236). Brenizer apparently stopped working on November 4, 2009. (R. at 193). That same day, Sharo noted that Brenizer's mental impairments had caused her to miss "several days of work." (R. at 235).

On February 3, 2010, Brenizer told Sharo that she had a new boyfriend and was "doing well" on Abilify. (R. at 270). Sharo reported that Brenizer was "responding well" to her medications. (R. at 270). Dr. Roger Glover, a non-examining psychological consultant, opined on February 9, 2010 that Brenizer was "able to meet the basic mental demands of competitive work on a sustained basis." (R. at 248). During a therapy session with Sharo conducted on April 7, 2010, Brenizer stated that she did not "feel depressed every day." (R. at 271). On June 9, 2010, Brenizer informed Sharo that she had moved in with her mother in order to get out of an "abusive" relationship. (R. at 272). Two months later, Brenizer reported that she was living with her father, but that "things [were] not going great." (R. at 273). As of November 9, 2010, some members of Brenizer's family were not speaking with her. (R. at 274). Sharo noted on January 19, 2011, that Brenizer was experiencing increased depression and "situational anxiety." (R. at 275).

In an assessment dated February 6, 2011, Sharo indicated that Brenizer was *per se* disabled under Listings 12.04 and 12.06. (R. at 266-269). Sharo reported that Brenizer had a "poor" ability to understand, remember and carry out detailed and complex job instructions, deal with members of the general public, deal with the stress associated with a usual work setting, function independently, and maintain attention and concentration. (R. at 263-264). Brenizer was

3

deemed to have a "fair" ability to relate to co-workers, use her judgment, interact with supervisors, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (R. at 263-264). Her ability to understand, remember and carry out simple job instructions, maintain her personal appearance, and follow work rules was described as "good." (R. at 263-264).

A finding of *per se* disability is warranted only if a claimant's impairments satisfy all of the applicable criteria. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). In order to satisfy the "B" criteria of Listings 12.04 and 12.06, a claimant's mental impairments must result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.04 & 12.06. Sharo opined that Brenizer's mental impairments satisfied all four of the "B" criteria. (R. at 266, 269). Dr. Glover indicated that Brenizer's impairments resulted in "mild" restrictions in her activities of daily living, "mild" difficulties in her maintenance of social functioning, and "moderate" difficulties in her maintenance of concentration, persistence or pace. (R. at 259). No extended episodes of decompensation were noted. (R. at 259). The ALJ concluded that Brenizer had "moderate" difficulties in maintaining her social functioning. (R. at 13). He adopted Dr. Glover's findings with respect to the remaining three criteria. (R. at 13-14). Consequently, Brenizer was found not to be *per se* disabled at the third step of the sequential evaluation process. (R. at 13-14).

As a CRNP, Sharo did not qualify as an "acceptable medical source" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). For this reason, she was not

4

able to confirm the existence of a "medically determinable impairment." *Id.* The existence of Brenizer's impairments, however, is not contested in this case. The ALJ determined that Brenizer was suffering from an adjustment disorder and an anxiety disorder. (R. at 12). Therefore, Sharo's opinion was relevant for the purpose of determining the degree to which those impairments interfered with Brenizer's ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

The question of whether a claimant's impairments meet or medically equal a Listing is specifically reserved for the Commissioner's determination. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "[T]reating source opinions on issues reserved for determination by the Commissioner are not entitled to any significant weight." *Valder v. Barnhart*, 410 F. Supp.2d 134, 140 (W.D.N.Y. 2006). For this reason, the ALJ was not required to credit Sharo's "cursory checklist" declaring Brenizer to be *per se* disabled under Listings 12.04 and 12.06. *Randolph v. Barnhart*, 386 F.3d 835, 840-41 (8th Cir. 2004). Given the nature of the inquiry relating to the "B" criteria, it was permissible for the ALJ to credit the findings of Dr. Glover over those of Sharo. *Small v. Astrue*, 840 F. Supp.2d 458, 465 (D. Mass. 2012).

Brenizer challenges the ALJ's residual functional capacity assessment and corresponding hypothetical question to Dr. Monaco. (Doc. 10 at 15-16). In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Brenizer's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to jobs involving no more than simple, routine, repetitive tasks in a low-stress work environment, which I define as no complex decision making, no high volume productivity requirements, very infrequent unexpected changes in the workplace, which needs to be a very stable and predictable working environment. She is limited to jobs involving no more than occasional interaction with the public, coworkers and supervisors.

(R. at 14). All of the limitations found by the ALJ were incorporated within his hypothetical question to Dr. Monaco. (R. at 60). Therefore, Dr. Monaco's testimony satisfied the Commissioner's burden of establishing the existence of jobs in the national economy that could be performed by an individual with the described limitations. *Burns v. Barnhart*, 312 F.3d 113, 122-124 (3d Cir. 2002). Brenizer can impugn the reliability of Dr. Monaco's testimony only by attacking the ALJ's underlying residual functional capacity assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

In determining Brenizer's residual functional capacity, the ALJ found Sharo's opinion to be "only partially credible" and purported to accord it "little weight." (R. at 18). He placed "some weight" on Dr. Glover's opinion in determining that Brenizer's impairments were not disabling. (R. at 17-18). Brenizer maintains that the ALJ erred in crediting Dr. Glover's assessment over that of Sharo. (Doc. 10 at 13).

When all other factors are in equipoise, an opinion provided by a treating source is entitled to more weight than an opinion supplied by a non-examining consultant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Under certain circumstances, however, the opinion of a non-examining consultant can be sufficiently probative of a claimant's ability to work to outweigh a contrary opinion expressed by a treating source. *Brown v. Astrue*, 649 F.3d 193, 196-97 (3d Cir. 2011). This situation frequently arises where a treating healthcare provider renders an opinion that is "conclusory and unsupported by the medical evidence." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In order to establish his or her entitlement to benefits under the Act, a claimant must demonstrate that both his or her medically determinable impairment (or combination of impairments) and his or her inability to work have lasted (or are expected to last) for the

statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-22 (2002). Sharo's treatment notes indicate that, during the course of Brenizer's treatment, her depressive symptoms were often "minimal" and controlled with medication. (R. at 237-240). Her symptoms worsened after her boyfriend went to jail. (R. at 236). She started to miss "several days of work." (R. at 235). When Brenizer got a new boyfriend, her depressive symptoms decreased and her energy level increased. (R. at 270). She later experienced difficulties when her "relationship became abusive" and members of her family stopped speaking with her. (R. at 272-274). Sharo noted that Brenizer's increased depression was attributable to "situational anxiety." (R. at 275). The ALJ found Sharo's opinion of sustained disability to be inconsistent with her treatment notes. (R. at 18). Because the documentary record indicated that Brenizer had done "fairly well while receiving conservative treatment," the ALJ concluded that she was not disabled. (R. at 15).

Although the ALJ accorded "little weight" to Sharo's opinion, he accounted for the functional limitations described in her assessment. Sharo stated that interactions with others would increase Brenizer's level of anxiety. (R. at 263). The ALJ addressed that concern by limiting Brenizer to jobs involving only occasional interaction with supervisors, co-workers, and members of the general public. (R. at 14). Sharo observed that work-related stress would interfere with Brenizer's ability to concentrate and focus on her duties and undermine her ability to make good decisions. (R. at 263). The ALJ accommodated those limitations by restricting Brenizer to "jobs involving no more than simple, routine, repetitive tasks [performed] in a low-stress work environment." (R. at 14). His residual functional capacity assessment specifically precluded jobs requiring an individual to make complex decisions or meet demanding "productivity requirements." (R. at 14). Since Brenizer had difficulty functioning

7

independently, the ALJ determined that she needed to be in a "stable and predictable working environment." (R. at 14, 263). It is worth noting that the assessment form completed by Sharo stated that a "poor" ability to function in a given area could not be equated with a complete inability to function in that area. (R. at 263). Sharo evidently believed that Brenizer had some ability to function in each of the relevant work-related areas. (R. at 263-264). Indeed, Sharo described Brenizer as a "very responsible person" who sometimes "struggle[d] because of mental health issues." (R. at 264). Under these circumstances, it was permissible for the ALJ to conclude that Brenizer's functional limitations did not preclude the performance of substantial gainful activity. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361-362 (3d Cir. 2011)(upholding a decision in which an administrative law judge had adopted some limitations found by a nurse practitioner and rejected other limitations on the basis of a contrary assessment provided by a non-examining consultant).

Brenizer testified that she frequently experienced crying spells and declined to shower. (R. at 36, 39, 43-44). She stated that she sometimes remained in her pajamas for three days at a time. (R. at 47-48). The ALJ determined that Brenizer's conservative "course of medical treatment" had diminished her credibility as a witness. (R. at 17).

Brenizer argues that the ALJ erred in failing to accord her testimony full credibility. (Doc. 10 at 16-20). Since the record contained evidence of mental impairments that could reasonably be expected to cause the symptoms alleged by Brenizer, her subjective complaints warranted "serious consideration." *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). Nonetheless, the ALJ was not required to credit Brenizer's testimony in every respect. *Chandler*, 667 F.3d at 363. During the relevant period of time, Brenizer saw Sharo only once every two months. (R. at 34). The conservative nature of Brenizer's treatment was a factor

8

relevant to the credibility of her subjective complaints. *Phillips v. Barnhart*, 91 Fed. Appx. 775, 781-82 (3d Cir. 2004)(unpublished). Accordingly, the ALJ acted within his discretion in declining to credit Brenizer's subjective complaints of disabling depressive symptoms. Because the Commissioner's decision is supported by substantial evidence, it will be affirmed.

Consistent with the analyses above, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 9**) is **DENIED**, Defendant's Motion for Summary Judgment (**Doc. 11**) is **GRANTED**, and the decision of the Commissioner of Social Security is **AFFIRMED**.

IT IS SO ORDERED.


September 12, 2012                                        s\Cathy Bissoon
                                                          Cathy Bissoon
                                                          United States District Judge

cc (via ECF email notification):

All counsel of record